Reversed and Remanded and Memorandum Opinion filed October 31, 2006








Reversed and Remanded and Memorandum Opinion filed
October 31, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00116-CV

_______________

 

JOSEPH I. SUSSMAN, Appellant

 

V.

 

OLD HEIDELBURG, INC. and SHAMU LEE=S INC. D/B/A WELLBREAD BAKERY, Appellees

                                                                                      
                                                         

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 05-64587

                                                                                                 
                                              

 

M E M O R A N D U M    O P I N I O N








In this
interlocutory appeal, Joseph I. Sussman challenges the trial court=s order denying his special
appearance.  We conclude Sussman=s limited contacts with the State of
Texas, undertaken solely in his capacity as attorney for a foreign corporation
pursuing litigation in another state, are insufficient to support specific
jurisdiction as alleged.  Accordingly, we reverse the trial court=s order and remand for further
proceedings.[1]

I.  Factual and Procedural Background

Sussman
is an attorney who resides in New Jersey and practices law in New York and New
Jersey.  He has never solicited business in Texas, owns no real or personal
property in Texas, and has never been admitted pro hac vice to any court
in Texas.  He has no offices, telephone, bank accounts, or clients in Texas,
and has never filed suit in this state.  Sussman has never solicited business,
entered a contract, or sold goods and services in Texas.  For the purposes of
this suit, Sussman=s sole connection with the State of Texas is his retention,
in New York, by Northern Leasing Systems, Inc. (ANorthern@), a New York corporation.  

Northern
hired Sussman to collect debts allegedly owed by Karim Zangeneh a/k/a Karim
Hagihat Zangeneh (AZangeneh@) and Jehangir Irani.  According to the verified complaint
filed in Northern Leasing Systems, Inc. v. Zangeneh, Index No. 12609-05
in the Civil Court of the City and County of New York, Zangeneh personally
guaranteed payment on an equipment lease under which Old Heidelberg, Inc.
d/b/a  Old Heidelberg Inn leased credit card verification equipment from
Northern.  According to the verified complaint filed in Northern Leasing Systems,
Inc. v. Irani, Index No. 6462-05 in the Civil Court of the City and County
of New York, Irani guaranteed a similar equipment lease for Shamu Lee=s, Inc. d/b/a Wellbread Bakery (AWellbread@).  








By their
express terms, both leases are governed by New York law, and Aall actions, proceedings or
litigation@ under the leases are required to be prosecuted in the ACounty of New York, State of New
York, and City of New York.@  The leases also include the following provision: ALessee and Guarantor agree that any
summons and/or complaint or other process to commence any litigation by
[Northern] will be properly served if mailed by certified mail, return receipt
requested, with delivery to either Guarantor, Lessee, or Lessee=s registered agent.@ 

Sussman
sent a demand letter to Zangeneh on Northern=s behalf, enclosing a draft of Northern=s verified complaint.  He also
executed summonses for Zangeneh and Irani to appear in New York courts. 
Sussman performed these tasks in New York.  Old Heidelberg and Wellbread filed
suit against Sussman in Harris County, Texas, alleging that the action of Asending Mr. Sussman=s letter with the unlawful draft
complaint was itself an act of fraud on Mr. Zangeneh.@ Old Heidelberg and Wellbread allege
that Zangeneh acted on the correspondence to his detriment and suffered
emotional injury.  The sole factual allegation against Sussman that pertains to
Wellbread is appellees= statement that ASussman filed a lawsuit to recover@ on the debt Irani allegedly owes to
Northern in his capacity as guarantor of Wellbread=s payments on the equipment lease. 
Appellees allege that, based on these facts, Sussman intentionally inflicted
emotional distress on Old Heidelberg and Wellbread.  Specifically, appellees
claim that Sussman=s conduct is the proximate cause of their emotional distress,
Aas they have been forced to defend
such claims filed by Sussman on behalf of Northern Leasing Systems, Inc. in the
distant forum State of New York.  The need to concurrently defend themselves in
additional litigation as a result of the foregoing has caused severe emotional
distress to [Old Heidelberg and Wellbread].@[2]

II.  Issues Presented








In three
issues, Sussman essentially challenges the legal and factual sufficiency of the
evidence supporting the trial court=s denial of his special appearance. 
Sussman argues that no jurisdictional facts were pleaded in appellees= petition, and that acts he performed
in his capacity as New York counsel pursuing claims in New York for his New
York client are not attributable to him personally.  Sussman also contends that
he has not purposefully availed himself of Texas law and has neither sought nor
obtained any benefit of the State of Texas; rather, his contacts with Texas are
merely fortuitous.  Finally, Sussman argues the trial court erred in finding
specific jurisdiction because appellees suffered no legally cognizable injuries.
  

III.  Standard of Review

Whether
a trial court has personal jurisdiction over a defendant is a question of law. 
Schott Glas v. Adame, 178 S.W.3d 307, 312 (Tex. App.CHouston [14th Dist.] 2005, pet.
denied).  When the relevant jurisdictional facts are undisputed, we review the
trial court=s determination de novo.  Id.  However, when the relevant facts
are disputed, a party may challenge the trial court=s underlying factual conclusions for
legal and factual sufficiency before determining whether the trial court erred
in granting or denying a special appearance.  Id.  If the trial court
does not issue findings of fact, we presume the trial court resolved all
factual disputes in favor of its judgment.  Id.  When the appellate
record includes the reporter=s and clerk=s records, these implied findings are not conclusive and may
be challenged for legal and factual sufficiency.  BMC Software Belgium, N.V.
v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002).  








The
plaintiff has the initial burden of pleading sufficient allegations to bring
the nonresident defendant within the provisions of the Texas long-arm statute. 
Schott Glas, 178 S.W.3d at 313.  A defendant=s contacts with the forum can give
rise to either specific or general jurisdiction.  Id. at 312B13.  Specific jurisdiction is based
on purposeful contacts that give rise to the cause of action.  Id.  at
313.  General jurisdiction allows personal jurisdiction based on contacts
unrelated to the litigation as long as those contacts are Acontinuous and systematic.@  Id.  Upon the filing of a
special appearance, the burden shifts to the defendant to negate all bases of
personal jurisdiction alleged by the plaintiff.  Id.  AThis standard does not mean that the
nonresident defendant must negate every possible ground in the universe, but
rather the acts in Texas alleged by the appellant to support personal
jurisdiction.@  Walker Ins. Servs. v.  Bottle Rock Power Corp., 108 S.W.3d 538,
548 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 

Personal
jurisdiction is proper if the defendant has established Aminimum contacts@ with Texas and the exercise of
jurisdiction comports with Atraditional notions of fair play and substantial justice.@  Am. Type Culture Collection,
Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing Int=l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90
L.Ed. 95 (1945)).  AThe purpose of the minimum-contacts analysis is to protect
the defendant from being haled into court when its relationship with Texas is
too attenuated to support jurisdiction.@  Id.  Thus, a defendant must Apurposefully avail@ itself of the privilege of
conducting activities in Texas and of the benefits and protections of Texas law
such that the defendant could reasonably anticipate being called into a Texas
court.  Schott Glas, 178 S.W.3d at 312.  

In
determining whether a defendant has purposefully availed himself of the
privilege of conducting business in Texas, Ait is only the defendant=s contacts with the forum that count
. . . .@  Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005). 
This ensures that a defendant is subject to personal jurisdiction based on its
own purposeful activity and not the unilateral acts of a third party.  Id.  Personal
jurisdiction may not be based on Texas contacts that are random, fortuitous, or
attenuated.  Id.  Finally, it is the quality and nature of the defendant=s contacts, rather than the quantity,
that is important to the minimum-contacts analysis.  Schott Glas, 178
S.W.3d at 312. 

IV.  Analysis

We agree
that Old Heidelberg and Wellbread failed to plead sufficient jurisdictional
facts to bring Sussman within the reach of the Texas long-arm statute. 
Moreover, even if we were to read the facts pleaded as invoking the trial court=s jurisdiction, we conclude that
Sussman has negated all bases of jurisdiction alleged.








Appellees= factual allegations are merely that,
in connection with New York litigation, (a) Sussman sent a demand letter to a
person in Texas who is not a party to the instant lawsuit, but is a party to
the New York action; and (b) arranged for service of process on two Texas
residents who are not parties to this case but are parties to the New York
lawsuits.  These allegations are insufficient to confer general or specific
jurisdiction on the trial court in this action.

A
three-prong test must be satisfied to determine that the exercise of specific
jurisdiction complies with the long-arm statute and due process guarantees: (1)
the nonresident defendant must purposefully do some act or consummate some
transaction as to establish minimum contacts with the forum state, (2) the
cause of action must arise from or be related to these contacts, and (3) the
assumption of jurisdiction by the forum state must not offend the traditional
notions of fair play and substantial justice.  Schlobohm v. Schapiro,
784 S.W.2d 388, 358 (Tex. 1990).[3]  The Atouchstone@ of this analysis is whether the
nonresident has Apurposefully availed@ himself of the benefits of
conducting business in the forum state.  Michiana, 168 S.W.3d at 784. 
In making this decision, courts are to focus on (1) only the defendant=s contacts, not the unilateral
actions of a third party, (2) whether the defendant=s actions were purposeful and not Arandom, isolated, or fortuitous@; and (3) whether Athe defendant [sought] some benefit,
advantage, or profit by >availing= itself of the jurisdiction.@  Id. at 785.








Here,
all of Sussman=s actions were performed in his capacity as the attorney for a New York
corporation litigating a lawsuit in New York, and thus, are not attributable to
him personally.  See Ross F. Meriwether & Associates, Inc. v. Aulbach,
686 S.W.2d 730, 731 (Tex. App.CSan Antonio 1985, no writ) (AWhen an agent arrives in Texas to
negotiate a contract for his principal, only the principal does business in the
state. The agent, having entered into no contract, has done no business in
Texas, and, therefore, has done no act nor has he consummated a transaction in
Texas.@).[4] 
Moreover, in sending a pre-suit demand letter and in arranging for service of
process, Sussman did not avail himself of the benefits of conducting business
in Texas.  To the contrary, these acts were performed in New York in the course
of Sussman=s representation of a New York client involved in litigation that was
required by contract to be conducted in New York.[5] 
The receipt of these documents in Texas is merely fortuitous because Sussman
had no control over the location of his client=s putative debtors. 

 








Additionally,
to the extent a cognizable cause of action is alleged,[6]
the claim does not arise from Sussman=s contacts with Texas.  In fact,
appellees= petition does not allege that Sussman had any contact with Old
Heidelburg or Wellbread or directed any act toward them.  Although appellees
allege that Sussman committed Aan act of fraud on Mr. Zangeneh@ by sending him a demand letter and
draft complaint, Zangeneh is not a party to the instant action.  Moreover,
Sussman prepared the letter and complaint in New York.








            Appellees
contend that in preparing or executing documents in New York, Sussman committed
a tort in Texas, and argue that, because appellees relied on Sussman=s allegedly fraudulent statements in
Texas, their reliance is sufficient to confer specific jurisdiction on the
trial court.  However, this argument is both legally and factually flawed.  As
the Texas Supreme Court has recently noted, A[a]llegations that a tort was
committed in Texas satisfy the Texas Long-Arm Statute, but not necessarily the
U.S. Constitution; the broad language of the former extends only as far as the
latter will permit.@  Michiana, 168 S.W.3d at 788.  AThe place where a plaintiff relies on
fraud may determine the choice of law, but choice-of-law analysis considers all
parties, local courts, legal policies, interested states, and the interstate
and international systems.  By contrast, minimum-contacts analysis focuses
solely on the actions and reasonable expectations of the defendant.@  Id. at 790 (disapproving of
opinions holding that specific jurisdiction turns on whether a defendant=s contacts were tortious rather than
on the contacts themselves); Le Meridien Hotels & Resorts v. LaSalle
Hotel Operating P=ship, 141 S.W.3d 870, 879B80 (Tex. App.CDallas 2004, no pet.) (reasoning
that, because Acausing an injury in Texas cannot, in and of itself, establish minimum
contacts sufficient to establish personal jurisdiction,@ proof of Atortious activities purposefully
directed at the State@ was insufficient to overcome special appearance).  Finally,
even assuming that the demand letter and service of process contained
fraudulent misrepresentations, none of these communications were Adirected at@ appellees.  It is undisputed that
the documents at issue were sent to two individuals who are not parties to this
suit.  Appellees= Areliance@ on a letter addressed to a nonparty is their own unilateral
act, and therefore, insufficient to confer jurisdiction.

We agree
with Sussman that the contacts alleged by appellees do not constitute Aminimum contacts@ for jurisdictional purposes.  See
generally Bergenholtz v. Cannata, No. 05-05-01288-CV, 2006 WL 1373533 (Tex.
App.CDallas, Aug. 17, 2006, no pet. h.). 
Accordingly, we hold that the trial court erred in denying Sussman=s special appearance.

V.  Conclusion

For the
foregoing reasons, we reverse the trial court=s order denying Sussman=s special appearance, and remand for
further proceedings consistent with this opinion.

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed October 31, 2006.

Panel consists of Justices Anderson,
Hudson, and Guzman.









[1]  Sussman has a pending claim for sanctions in
connection with his special appearance.  See Tex. R. Civ. P. 120a(3).  Thus, we do not render judgment,
but remand to give the trial court an opportunity to consider the claim.





[2]  Appellees additionally stated a claim against
Sussman under the Deceptive Trade Practices Act, but conceded at oral argument
that they lack consumer status and are not pursuing this claim.





[3]  General jurisdiction requires a showing that the
defendant conducted substantial activities within the forum, a more demanding
minimum contacts analysis than for specific jurisdiction.  General jurisdiction
is present when a defendant=s contacts are
continuous and systematic, permitting the forum to exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state.  CSR Ltd. v. Link,
925 S.W.2d 591, 595 (Tex. 1996).  Appellees have not alleged that Sussman is
subject to the general jurisdiction of the trial court.





[4]  When it became clear that Sussman=s actions in sending a demand letter and arranging for
service of process were the only Ajurisdictional
acts@ alleged by appellees, Sussman pointed out that these
acts are absolutely privileged.  See Randolph v. Walker, 29 S.W.3d 271,
278 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (ACourts have deemed conduct related to the initiation
of a suit as sufficiently related to a judicial proceeding and, therefore,
absolutely privileged.@).  Appellees argue that Aabsolute privilege@ is
an affirmative defense, and that by asserting the privilege, Sussman waived his
special appearance.  This contention is without merit.  Sussman raised his objection
to consideration of privileged material in a letter brief to the trial court
that was expressly in support of Sussman=s
special appearance.@  The letter states in pertinent part that Aeven if the Court could consider Mr. Sussman=s pre-filing demand letters and phone calls for
jurisdictional purposes . . . as a matter of law, those communications are not
actionable, and therefore will not support [appellees= claims] . . . Consequently, they cannot constitute
actionable conduct directed at the State for jurisdictional purposes either.@ Sussman unambiguously argued that the privileged
nature of these communications prevented appellees from effectively relying on
these contacts to establish jurisdiction.  See  in re E.I. DuPont de Nemours
& Co., 136 S.W.3d 218, 223 (Tex. 2004) (stating that privileged
material Amay  not be considered by the factfinder, even when
the factfinder is the trial court.@).





[5]  Additionally, in the contracts that form the basis
of the New York litigation, Zangeneh and Irani not only agreed that New York
would be the forum for resolving disputes, but agreed that A[a]ny notice intended to be served hereunder shall be
deemed sufficiently sent if sent by regular mail, postage prepaid, addressed to
the party at the addresses contained herein.@ 
Those addresses are in Texas; thus, the parties to the contractsCNorthern, Zangeneh, and IraniCintended that their disputes would be resolved in New
York, even though documents connected with such litigation might be served or
received in Texas.  





[6]  Because they are corporations, appellees have no
cognizable claim for intentional infliction of emotional distress.  See
Haygood v. Chandler, No. 12-02-00239-CV, 2003 WL 22480560, at *6 (Tex. App.CTyler, Oct. 31, 2003, pet. denied) (mem. op.).